# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 7 |
|  | ) | Case No. 21-30171-EDK |
| SHONN K. MONDAY, | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) |  |
| T.H. GLENNON CO. INC., | ) | Adversary Proceeding |
|  | ) | No. 21-3018 |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| SHONN K. MONDAY, | ) |  |
|  | ) |  |
| Defendant | ) |  |
|  | ) |  |

## <u>MEMORANDUM OF DECISION</u>

Before the Court after trial is a complaint seeking, *inter alia*, a determination that the damages awarded to T.H. Glennon Co., Inc. ("Glennon") against Shonn K. Monday, the debtor in the underlying Chapter 7 bankruptcy case (the "Debtor"), by the United States District Court for the District of Massachusetts (the "District Court") is excepted from the Debtor's bankruptcy discharge pursuant to § 523 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code").[1]  While a trial in this matter was conducted by this Court, that evidentiary hearing was ultimately unnecessary, because, for the reasons set forth below, the Court finds and rules that principles of issue preclusion compel a determination that the judgment issued by the

---

[1] *See* 11 U.S.C. §§ 101 *et seq.*  All references to statutory sections are to the provisions of the Bankruptcy Code unless otherwise stated.

District Court on March 23, 2022 (the "Judgment") is excepted from the Debtor's discharge pursuant to § 523(a)(6).

I.    FACTS AND TRAVEL OF THE CASE

The following facts are taken largely from the Findings of Facts, Rulings of Law, and Order for Judgment issued by the District Court on March 17, 2020, *see T.H. Glennon Co. v. Monday*, Civil Action No. 18-30120-WGY, 2020 WL 1270970 (D. Mass. March. 17, 2020) (the "District Court Ruling"), augmented by matters of record in the Debtor's bankruptcy case and this adversary proceeding of which the Court may take judicial notice, *see Currie v. Wells Fargo Bank, N.A. (In re Currie)*, Slip Copy, Bankr. No. 11-17349-JNF, Adv. No. 12-1009, 2013 WL 1305805, *1 n.1 (Bankr. D. Mass. March 28, 2013) ("The Court may take judicial notice of the documents in the debtor's file and those in the Court's own records.").

Glennon is a chemical company that, among other things, manufactures dry and wet mulch colorants and sells a wet mulch coloring machine called the "Mulch ColorJet." *Glennon*, 2020 WL 1270970 at *2.   In September 2009, the Debtor was employed by Glennon as a salesperson, primarily responsible for sales in the Northeast. *Id*.   As part of his employment, the Debtor was provided with a computer, phone, and iPad. *Id*.   And, upon his employment, the Debtor signed a non-disclosure Confidentiality Agreement (the "NDA") that required the Debtor to keep information confidential, refrain from taking advantage of business opportunities that were related or similar to Glennon's current or anticipated business opportunities, refrain from competing during employment or two years after termination with any of Glennon's direct competitors, and to return all confidential information, including computers, documents, or devices containing confidential information, upon the Debtor's termination. *Id*.

After declining sales and other lapses in performance, Glennon terminated the Debtor's employment in June 2018. *Id.* When the Debtor returned the computer, phone, and iPad provided to him by Glennon, Glennon discovered that they each were wiped of all data and the phone and iPad were reset to factory settings. *Id.* The Debtor subsequently refused to provide the missing data to Glennon when requested. *Id.* at *3. Kathleen Shea, Glennon's marketing director, became concerned and investigated further. *Id.* Shea then discovered that the Debtor had sent multiple emails to himself and his spouse from Glennon's database of customer contacts maintained with Filemaker (the "Filemaker Database"), including an email that contained Glennon's financial revenue and customer order information. *Id.* And, after searching the business registry for the Commonwealth of Massachusetts, Shea discovered the existence of a website for a company named TMG Green, LLC ("TMG Green"), *id.*, a corporation registered by the Debtor in April 2016 (while the Debtor was still employed by Glennon), *id.* at *2.

Upon further investigation, Shea (and other Glennon executives and employees), also discovered that Monday had deleted work emails, some of which were recoverable. *Id.* at *3. Two recovered emails had been sent by the Debtor to customers, directing them to the TMG Green website and, as to one of the customers, recommending a "ColorCritter Machine," *id.* at *3, a dry mulch coloring machine, the patent for which was "owned by Ulderic Boisvert of Greenwood Farms and H.U.R.B. Landscaping, a former Glennon customer (collectively, "H.U.R.B.")," *id.* at *4.

Concerned about the missing data, and with particular concerns regarding the security of the Filemaker Database containing "contact information and records for over 4,000" of

Glennon's customers, *id.* at *3,[2] Glennon hired Black Swan Digital Forensics ("Black Swan") to forensically analyze the Debtor's returned equipment and, later, to analyze an external hard drive belonging to the Debtor that was obtained during the District Court litigation, *id*.  Black Swan recovered a significant amount of data and deleted files, which were then analyzed by Steven Presser, Glennon's forensic computer expert.  *Id.*  The District Court found, based on Presser's expert testimony, that the Debtor had deleted over 6,000 files from the external hard drive and that the files had originated on the Debtor's computer.  *Id*.

Employee access to the Filemaker Database was restricted, with employees required to enter a username and password to access the database, and the accessible information was limited.  *Id.* at *3, 14.  "[F]or example, [the Debtor] could only access contacts for the twelve states he covered as a salesman," *id.* at *3, and "only five of the company's employees could access the entire list," *id.* at *14.  However, it was discovered that the Debtor had somehow accessed the entirety of Glennon's customer list for 2015-2018 and emailed himself screenshots from the Filemaker Database.  *Id.* at *4.

The recovered data also contained documents related to the ColorCritter, which the Debtor testified he was "working on."  *Id.*  Those documents included diagrams, pictures, notes on technical requirements, and handwritten and typed advertisements for the ColorCritter.  *Id*.  The documents also included a TMG Green business plan written by the Debtor's spouse involving the ColorCritter, which the District Court found was written on behalf of TMG Green and the Debtor.  *Id.*

Glennon commenced suit against the Debtor in July 2018 (later adding additional

---

[2] As the District Court further explained, the Filemaker Database "included internal records such as volume of sales, history of contacts, and potential leads, as well as hard-to-compile information such as the best contact information for each potential client."  *Id.* at *14.

defendants, including the Debtor's spouse, TMG Green, and the H.U.R.B. entities).[3]   After

dismissal of some of the claims, the District Court held a trial as to the Debtor only on Glennon's

claims for breach of contract, violations of the Computer Fraud and Abuse Act, misappropriation

of trade secrets, copyright violations, unfair and deceptive trade practices, tortious interference

with a contractual relationship, and diversion/usurpation of corporate opportunity.  *Id*. at *1.

After trial, and prior to the issuance of a final decision on the various claims, the District Court

"issued an Order enjoining [the Debtor], [the Debtor's spouse], and TMG Green from engaging

in the mulch coloring business for two years, and from using the TMG Green name or logo." *Id*.

The Order also required the defendants in the District Court action to return "any iteration of

Glennon's proprietary Filemaker Database . . . and to refrain from entering into any contractual

relationship with any person or entity listed in the database." *Id*.

The District Court ruled in favor of Glennon on the breach of contract claim, holding that

the Debtor violated various clauses of the NDA by "failing to return confidential information, by

engaging in competition while during employment, and by soliciting business in his own

interest." *Id.* at *7.  Specifically, the District Court found that the Debtor failed to return

confidential information by wiping all the data from devices Glennon had provided him, directly

competed with Glennon by working on the ColorCritter, and, to a limited extent, "attempted to

solicit customers away from Glennon." *Id*.  The District Court ultimately found, however, that

the "evidence does not establish that [the Debtor] engaged in sufficient actual competition to

make damages more than speculative," and that the equitable remedy previously provided to

Glennon was sufficient. *Id.* at *8.

The District Court also held that Glennon violated the federal Computer Fraud and Abuse

---

[3] The suit was initially filed in the Massachusetts Superior Court on July 17, 2018, but was removed to
the federal District Court on July 25, 2018.  *Id.* at *1.

Act ("CFAA"), 18 U.S.C. § 1030, a primarily criminal statute that allows a person to bring a civil action "so long as the person has suffered 'damage or loss by reason of a violation' of the CFAA." *Id*. In so ruling, the Court found that the Debtor had "intentionally exceeded his authorization, through interactions with a protected computer, to obtain something of value worth at least $5,000" – namely, by exceeding his limited authorized access to the Filemaker Database and emailing those files containing information from the database to himself, files which the Court concluded were worth more than $5,000. *Id.* at *10-11.

The District Court found that "[the Debtor's] actions caused both damage and loss" within the meaning of the CFAA by compromising the integrity of confidential information through the Debtor's unauthorized access and copying, resulting in "losses in dealing with the aftermath of [the Debtor's] breach." *Id.* at *11. In calculating the damage award on account of the CFAA violation, the District Court held that damages were appropriately calculated based on the "actual cost of repairing the damage from the data breach." *Id.* at *12. Accordingly, the District Court awarded Glennon total damages of $42,100 – $22,100 for expert costs and $22,000 for the costs of Black Swan's forensic analysis – as the costs were incurred "in repairing or analyzing the damage [the Debtor] did to his devices while covering up the Filemaker breach." *Id*.

With regard to the misappropriation of trade secrets, the District Court concluded that Glennon succeeded in proving that the Debtor had violated both federal and Massachusetts theft of trade secrets laws with respect to the Filemaker Database. *Id.* at 13-16. In ruling on the misappropriation claim, the District Court found that the Debtor had obtained trade secrets through "improper means," "by accessing and downloading the entirety of the Filemaker database over at least four consecutive years, particularly given that he had to circumvent

6

password protection to access this information." *Id.* at *15.  The District Court further found that the Debtor was "intentional in accessing the database, and intentionally deleted files to cover his tracks," and that the Debtor intended to use the information in the database "in support of his separate business venture." *Id.* at *16.  However, the District Court found that the trade secrets misappropriation did not result in any actual losses in addition to those "covered by the analysis of the CFAA violations," *id.* at *16, and stated that the injunction order provided a sufficient remedy for the violations, *id.* at *13.

As to the remaining District Court claims, the District Court found that the TMG Green name and logo violated Massachusetts common law against unfair competition and that the Debtor had diverted and usurped corporate opportunities, but declined to award additional monetary damages for the violations, finding that the injunction provided sufficient relief.  *Id.* at *16-17, 18-19.  And, finally, the District Court ruled in favor of the Debtor on Glennon's claims for tortious interference with a contractual relationship.  *Id.* at *18.

On May 13, 2021, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.  On August 16, 2021, Glennon filed this adversary proceeding against the Debtor, seeking a determination that the debt owed to Glennon is excepted from the Debtor's bankruptcy discharge, seeking dismissal of the bankruptcy case, and challenging the Debtor's homestead exemption.  The Debtor received a discharge of all of his other dischargeable debts on August 23, 2021.

The Court conducted a trial in this adversary proceeding in September 2022, at which two witnesses appeared, the Debtor[4] and Kathleen Shea.  At the conclusion of trial, both parties were given an opportunity to file post-trial briefs, which they have done, and the matter was

---

[4] While the Debtor was represented by counsel in the underlying bankruptcy case, the Debtor has been acting *pro se* in this adversary proceeding.

7

taken under advisement.

## II.   POSITIONS OF THE PARTIES

In the complaint, Glennon originally sought an estimation of its claim, asserted that the debt owed to Glennon is excepted from discharge under various provisions of § 523, alleged that the Debtor had engaged in "misconduct justifying dismissal," argued that the Debtor's homestead was "late acquired" and/or the Debtor committed misconduct that would cap the amount of the Debtor's homestead under §§ 522(p) or (q), claimed that the automatic upward adjustment of the homestead limitations in §§ 522(p) and (q) is unconstitutional, and asserted that the Debtor's homestead does not apply to Glennon's claim, was a fraudulent and preferential transfer, and is invalid.[5]

Glennon has not pressed its original request that the Court estimate the amount of Glennon's claim, and the District Court's Judgment definitively established the claim as $42,100 (which Judgment is now final).[6]   Furthermore, after trial, Glennon essentially abandoned its nondischargeability claim under § 523(a)(2)(A) (for debts obtained through fraud),[7] its claims

---

[5] The complaint is not divided into separate "counts," but contains various claims arranged under the headings "Objection Request for Estimation," "Complaint to Establish Nondischargeability," "Misconduct Justifying Dismissal," and "Homestead Exemption."  Complaint, Aug. 16, 2021, ECF No. 1.

[6] Although the District Court's Ruling was entered on March 17, 2020, the final Judgment as to the Debtor was not issued until March 23, 2022, after the adversary proceeding was filed.  The Debtor did not appeal the Judgment.

[7] In its post-trial brief, Glennon says that "[u]nless the Court, based on Judge Young's findings[,] sees actual fraud or false pretenses there is no call for the application of §523(a)(2)(a) [sic]."  Glennon Post-trial Brief, 6, Oct. 27, 2022, ECF No. 93.  Glennon goes on to state, however, that Glennon "believes that receiving the Filemaker Database, as the earlier judgment held, under whatever unknown form of computer hacking allowed [the Debtor] to bypass the computer access controls is sufficient to qualify for §523(a)(2)(a) [sic] false pretenses," *id.*, but this argument is not further developed.  This Court will not develop an argument on Glennon's behalf relative to the § 523(a)(2)(A) claim, and the claim is thus deemed waived.  *See Casanova v. Wyndham Grand Rio Mar Beach Resort & Spa*, 205 F. Supp. 3d 220, 237 (D.P.R. 2016) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort

related to the Debtor's homestead exemption,[8] and the request for dismissal of the underlying

bankruptcy case,[9] focusing instead on its arguments that the Judgment should be excepted from

the Debtor's discharge under §§ 523(a)(4), (6), and (13).

In this dischargeability proceeding, Glennon says that principals of issue preclusion

apply, affording preclusive effect to the District Court's Ruling.  With regard to Glennon's claim

that the Judgment should be excepted from discharge under § 523(a)(6) as one "for willful and

malicious injury by the debtor," 11 U.S.C. § 523(a)(6), Glennon relies on various findings of fact

and conclusions of law reached by the District Court, such as the Debtor's bypassing security

protocols to obtain otherwise protected or confidential information from Glennon, emailing

himself (and his spouse) Glennon's financial and customer information, coordinating with

H.U.R.B. to develop a competing business, directing customers to the TMG Green website and

the ColorCritter machine, and then wiping the company's devices and the external hard drive of

all data to obfuscate his actions.  Glennon also posits that "caselaw appears generally

comfortable concluding that the behavior prohibited by the CFAA is of the type which is

---

at developed argumentation, are deemed waived.'  The Court will not do counsel's work.") (quoting
*Glob. NAPs, Inc. v. Verizon New England, Inc.*, 706 F.3d 8, 16 (1st Cir. 2013)) (internal citation omitted).

[8] The assertions in the complaint related to the Debtor's homestead exemption were not separated into
separate counts, but were lumped together in one section titled "Homestead Exemption."  In its post-trial
brief, only one sentence addressed the Debtor's homestead exemption – Glennon's acknowledgment that
it "did not develop sufficient evidence related to the homestead."  Glennon Post-trial Brief, 10.  As
Glennon admitted the failure to produce any evidence related to the homestead issues at trial or to present
further related arguments in its post-trial brief, all the claims related to the Debtor's homestead and
§§ 523(p) and (q) are deemed waived.

[9] The complaint did not cite to any statutory or other authority in support of the claim that the underlying
bankruptcy case should be dismissed, and the issue of whether the Debtor's main bankruptcy case should
be dismissed in the context of this adversary proceeding was not the subject of any evidentiary
presentation at the trial, nor was it discussed in Glennon's post-trial brief.  In any event, as the Debtor has
received a discharge of all other dischargeable debts with the exception of the debt owed to Glennon,
dismissal of the main case would serve no purpose, and the request is likely moot.  *See Rosado v. Pablos
(In re Rosado)*, No. PR 11–081, Bankr. No. 07–05871–ESL, 2012 WL 2564375, *5 (B.A.P. 1st Cir. June
29, 2012).

proscribed by the 'willful and malicious injury' nondischargeability provisions." Glennon Post-trial Brief, 6.[10] Therefore, Glennon argues, based on the District Court's findings, the Debtor's behavior and the damage caused to Glennon render the Judgment nondischargeable as a debt resulting from a willful and malicious injury.

With regard to § 523(a)(4), which excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," 11 U.S.C. § 523(a)(4), Glennon maintains that the District Court found that the Debtor stole the FileMaker Database and that the damages awarded represent Glennon's costs in attempting to recover those deleted files. Glennon also notes that the District Court held that the Debtor occupied a position of "trust" and owed a duty of loyalty. Accordingly, Glennon says that the Judgment should be excepted from the Debtor's discharge pursuant to § 523(a)(4), both because the Debtor committed computer fraud while acting in a fiduciary capacity and because the Debtor obtained the Filemaker Database through larceny.

Finally, Glennon maintains that the Judgment should be deemed excepted from discharge pursuant to § 523(a)(13), which excepts from discharge debts "for any payment of an order of restitution issued under title 18, United States Code," 11 U.S.C. § 523(a)(13), a provision often described as rendering federal criminal restitution awards nondischargeable. While the Judgment obtained by Glennon is one for civil damages under the CFAA, Glennon notes that the statute is contained in Title 18 of the United States Code and says that the damages awarded pursuant to the CFAA were remedial. Reading "any payment" broadly, and in light of the "special" placement of the CFAA civil remedy with its criminal counterpart, Glennon says that

---

[10] The Debtor cites to *Darras v. Nolan (In re Nolan)*, Case No. 8:15-bk-11942-RCT, Adv. No. 8:16-ap-00195-RCT, 2016, WL 11708101 (Bankr. M.D. Fla. Aug. 4, 2016); *Brown Jordan Int'l, Inc. v. Carmicle (In re Carmicle)*, Case No. 17-32918(1)(7), Adv. No. 17-3069, 2018 WL 3583054 (Bankr. W.D. Ky. July 24, 2018); and *Frisco Med. Ctr., L.L.P. v. Bledsoe (In re Bledsoe)*, 147 F. Supp. 3d 646 (E.D. Tex. 2015).

the Judgment should be excepted from discharge pursuant to § 523(a)(13).

The Debtor filed two responsive post-trial briefs, each of which focus largely on challenges to the District Court's findings and rulings and on the Debtor's contention that Glennon has failed to demonstrate that the debt owed to Glennon was obtained by fraud. The Debtor maintains that he did not wipe the data from the laptop returned to Glennon, that he was advised by counsel to delete the contents of his personal hard drive before providing it to Glennon in the District Court action, and that Glennon did not lose its data, because the data was stored in the cloud. The Debtor also argues that his work on the ColorCritter did not directly compete with Glennon. Finally, citing to *Van Buren v. United States*, -- U.S. --, 141 S. Ct. 1648 (2021) and *Duro Inc. v. Walton*, Case No. 3:13-CV-103 JD, 2021 WL 4453741 (N.D. Ind. Sept. 29, 2021), the Debtor says that CFAA does not apply to his situation and that Glennon cannot use the CFAA as the basis for its fraud claim, since the Debtor "was provided with access and data, returned all items along with his own personal hard drive and retained no items/data." Debtor Responsive Pleading, 2 ¶ 5, Nov. 16, 2022, ECF No. 99. Accordingly, the Debtor asks the Court to determine that the Judgment is dischargeable.

## III.   DISCUSSION

It is axiomatic that collateral estoppel principles, i.e., issue preclusion,[11] apply in dischargeability proceedings brought pursuant to § 523 of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991). Because the Judgment was issued by a federal district court, in order to determine the preclusive effect of the District Court Ruling in this adversary

---

[11] "The term 'issue preclusion' encompasses the doctrine of collateral estoppel. 'Currently the more descriptive term "issue preclusion" is often used in lieu of "collateral estoppel."'" *Gray v. Tacason (In re Tacason)*, 537 B.R. 41, 50 n.9 (B.A.P. 1st Cir. 2015) (quoting *Yeager v. United States*, 557 U.S. 110, 120 n.4 (2009)) (internal citation omitted).

proceeding, federal principles of collateral estoppel (issue preclusion) apply.  *Weaver v. Weston (In re Weston)*, 307 B.R. 340, 343 (Bankr. D.N.H. 2004).

> Under the federal standard of issue preclusion, a party must establish four essential elements: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.

*Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 376 (Bankr. D. Mass. 2006).

Simply put, "[t]he doctrine of issue preclusion, also referred to as collateral estoppel, bars the relitigation of issues determined in prior court actions."  *O'Rorke v. Porcaro (In re Porcaro)*, 545 B.R. 384, 395 (B.A.P. 1st Cir. 2016) (quoting *Tacason*, 537 B.R. at 50).  "As a result, where there has been a prior [ ] court judgment, the bankruptcy court's ultimate dischargeability determination will be governed by any factual issues that were actually and necessarily decided by the [prior] court."  *Id.* (quoting *B.B. v. Bradley (In re Bradley)*, 466 B.R. 582, 586 (B.A.P. 1st Cir. 2012)); *see also Piccicuto v. Dwyer*, 39 F.3d 37, 42 (1st Cir. 1994) (a prior court's "unambiguous and factually supported findings must be given effect" in § 523(a)(6) action).  For issue preclusion to apply, "'[t]he identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical.'  'Further, the issue need not have been the ultimate issue decided . . . ; issue preclusion can extend to necessary intermediate findings . . . .'"  *Porcaro*, 545 B.R. at 398 (quoting *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012)) (internal citation omitted).

Pursuant to § 523(a)(6), any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity," is excepted from a debtor's general discharge under § 727.  11 U.S.C. § 523(a)(6).  In order to succeed on a § 523(a)(6) nondischargeability

claim, the creditor must prove, by a preponderance of the evidence, that "(1) the debtor injured [the creditor] or [the creditor's] property; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious." *Porcaro*, 545 B.R. at 396.  Therefore, because the District Court's Judgment is now final, this Court is left with deciding whether the issues determined in the District Court "were identical to those in the adversary proceeding under § 523(a)(6), requiring the establishment of an injury, maliciousness, and willfulness." *Id.* at 398.

"Although the term 'injury' is not defined by the Bankruptcy Code, it is understood to mean a 'violation of another's legal right, for which the law provides a remedy.'" *Tacason*, 537 B.R. at 50 (quoting *First Weber Grp., Inc. v. Horsfall*, 738 F.3d 767, 774 (7th Cir. 2013)).  The District Court clearly found that Glennon was injured by the Debtor's actions, specifically ruling that "[the Debtor's] access and copying of confidential information caused damage by compromising the 'integrity' of that information." *Glennon*, 2020 WL 1270970 at *11.  As a result of that injury, Glennon "incurred losses in dealing with the aftermath," *id.*, and the damage award represents compensation for those losses incurred from the injury, *id.* at *12 ("Glennon . . . bore all these costs in repairing or analyzing the damage [the Debtor] did to his devices while covering up the Filemaker breach.  These losses are thus a direct consequence of that breach, and the exact type of loss contemplated by the CFAA.")

The District Court's findings also compel a ruling here that the Debtor's actions were "willful" within the meaning of § 523(a)(6).  Because the word "willful" "modifies the word 'injury,' . . . nondischargeability under [§ 523(a)(6)] . . . requires 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Bradley*, 466 B.R. at 587 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998)).  And intentional actions that are "known by the debtor to be 'substantially certain to cause injury'" are also considered to be

"willful" within the meaning of § 523(a)(6). *Id.* (quoting *Hermosilla v. Hermosilla (In re Hermosilla),* 430 B.R. 13, 22 (Bankr. D. Mass. 2010)). "Thus, a debtor who intentionally acts in a manner he knows, or is substantially certain, will harm another may be considered to have intended the harm and, therefore, to have acted willfully within the meaning of § 523(a)(6)." *Porcaro*, 545 B.R. at 396 (quoting *McAlister v. Slosberg (In re Slosberg)*, 225 B.R. 9, 19 (Bankr. D. Me. 1998)).

The District Court held that the Debtor acted intentionally when he accessed the Filemaker Database without authorization. *See Glennon*, 2020 WL 1270970 at *10 ("In acquiring the complete Filemaker database, [the Debtor] intentionally exceeded his authorization."), *16 ("There is evidence that [the Debtor] was both intentional in accessing the database, and intentionally deleted files to cover his tracks."). Not only was the act itself intentional and the injury to Glennon "substantially certain" to result, but the District Court's unassailable findings compel the conclusion that the Debtor intended to cause the very injury that resulted – a breach of the security of Glennon's confidential information.

The Court also finds that the District Court Ruling is preclusive on the issue of whether the Debtor acted "maliciously" within the meaning of § 523(a)(6). In the First Circuit, "§ 523(a)(6)'s element of 'malice' requires the creditor to show that the injury was caused 'without just cause or excuse.'" *Porcaro*, 545 B.R. at 396 (quoting *Bradley*, 466 B.R. at 587; citing *Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur)*, 737 F.3d 814, 818 (1st Cir. 2013)) (internal quotations omitted). A finding of malice does not require evidence of "personal hatred, spite or ill-will," *Lavesseur*, 737 F.3d at 818, but "[t]he injury must have been committed in 'conscious disregard of one's duties,'" *id.* (quoting *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir. 1997)).

14

The District Court found and ruled that the Debtor's unauthorized access and dissemination of Glennon's confidential information violated his duty to keep the information confidential and was undertaken "to obtain something of value worth at least $5,000," *Glennon*, 2020 WL 1270970 at *10, and "in support of his separate business venture," *id.* at *16. Furthermore, the Debtor acted with knowledge of his wrongdoing; as the District Court observed, "[the Debtor's] deletion of the files is indicative of consciousness of guilt." *Id.* at *10. These findings establish that the Debtor acted "without just cause or excuse," and "in conscious disregard" of the Debtor's duties, satisfying the "malice" requirement of § 523(a)(6). *See Lavesseur*, 737 F.3d at 818; *Printy*, 110 F.3d at 859.

In opposition, the Debtor disputes certain factual findings and legal conclusions reached by the District Court. However, because the Judgment is final, this Court is precluded from relitigating the District Court's findings of fact and rulings of law. In sum, this Court finds, and rules, that the District Court's findings included in the Ruling establish that the issues of injury, willfulness, and maliciousness were involved in the prior action, were actually litigated, were determined by a valid and binding final judgment, and were essential to the District Court's Judgment. Accordingly, Glennon has established, by a preponderance of the evidence, that the Judgment should be excepted from the Debtor's discharge pursuant to 11 U.S.C. § 523(a)(6).[12]

## IV.   CONCLUSION

For all the foregoing reasons, while Glennon has waived its claims pursuant to § 523(a)(2)(A) and all claims related to the Debtor's homestead exemption (including any constitutional challenges to §§ 523(p) and (q)), the Court will enter judgment in favor of

---

[12] Having so determined, the Court need not, and does not, determine whether the Judgment is also excepted from discharge under §§ 523(a)(4) and/or (13).

Glennon declaring the Judgment nondischargeable pursuant to § 523(a)(6).  A separate judgment

in conformity with this Memorandum of Decision will issue forthwith.


DATED: March 9, 2023                    By the Court,

                                        _____

                                        Elizabeth D. Katz
                                        United States Bankruptcy Judge